(No. 20858.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JULIUS FRANK MAYNARD, Plaintiff in Error.

*Opinion filed February 19, 1932.*

BRUMFIELD & LAWRENCE, and BENJAMIN G. POLLARD, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, HARRY J. BUSCH, and EUCLID TAYLOR, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county with one Sylvester Springer and one William H. A. Moore, for the murder of Julia Hawkins. Springer and Moore obtained a separate trial. Plaintiff in error was tried, found guilty and sentenced to death. The defense was insanity. Plaintiff in error brings the cause here, assigning as error the refusal of the court to grant the peti-

tion of his counsel for appointment of a guardian *ad litem* for him for the purpose of filing a petition for change of venue, and certain assigned errors on rulings concerning the admissibility of testimony and in instructing the jury.

On July 5, 1930, the body of Julia Hawkins was found in a room on the third floor in the rear of the premises known as 4753 South parkway, in the city of Chicago. These rooms had formerly been occupied by Moore. The body was removed to a morgue and identified. Plaintiff in error was arrested at his office at Forty-seventh street and South parkway, together with Springer and Moore, who had offices in the same suite. They were taken to the morgue, where plaintiff in error stated that he had never seen the deceased. He was taken to the police station and then to the detective bureau about 5:00 o'clock, where he was questioned until about 1:30 the next morning and the next day between 12:30 and 4:30, at which latter time he signed a confession in the presence of the chief of detectives and five other police officers. The evidence showed that Julia Hawkins came to her death as result of shock and hemorrhage following an extensive skull fracture.

It was stipulated between counsel for the State and for plaintiff in error that the records of the probate court of Cook county show that the last will and testament of William N. Hawkins, husband of Julia Hawkins, had been probated, and that it devised and bequeathed to Julia Hawkins and to plaintiff in error all of the testator's estate after the payments of debts and funeral expenses and after the death of Julia Hawkins to plaintiff in error in fee simple. This will appointed plaintiff in error executor thereof without bond and was drawn by him.

The record shows that on arraignment a plea of not guilty was entered in behalf of plaintiff in error. It does not show whether the plea was entered by him in his own person or by his counsel for him. His counsel presented to the court, prior to the commencement of the trial, a peti-

tion for the appointment of a guardian *ad litem* for plaintiff in error, which set out that in the month of March, 1918, he was discharged from the United States army as, surgically unfit for duty, his ailment being a form of insanity known as dementia præcox. The petition stated that plaintiff in error had been an inmate of the Elgin State Hospital for the Insane; that he had been examined at numerous times since his discharge from the army and the same ailment was found to be present, and that according to said records and examinations defendant is now an insane person. The petition prayed that a guardian *ad litem* be appointed for plaintiff in error with full powers incident to such appointment. The record shows that on presentation of this petition the court inquired of counsel the purpose for which it was presented, and was informed that it was for all purposes for the protection of the rights of plaintiff in error. The court then inquired whether the petition was presented for the purpose of obtaining a change of venue, and counsel replied that it was. The petition was denied.

On the trial of the cause the State offered in evidence the confession of plaintiff in error. On objection thereto the jury was excused and the court heard testimony as to whether plaintiff in error was abused or mistreated or promised immunity at the time the confession was procured, but refused to hear evidence on the objection that statements made by plaintiff in error in the form of a confession were incompetent because he had been adjudged insane in the county court of Cook county in 1921 and no record existed of his restoration. On the trial numerous witnesses were introduced on behalf of plaintiff in error who testified that in their opinion he is insane. The State in rebuttal offered witnesses testifying that in 1928 he attended the Chicago College of Law and thereafter conducted a legal aid bureau. Those witnesses testified that in their opinion he is sane. The police officers who were

present at the time the statement of plaintiff in error was taken all testified that he was not in any way mistreated and that no promise of immunity was made to him.

The first question here presented is whether the court erred in denying the petition for appointment of a guardian *ad litem* for the purpose of presenting a motion for change of venue. Section 20 of the act in relation to change of venue (Cahill's Stat. 1931, p. 2748,) applies to criminal cases and is as follows: "Every application for a change of venue shall be by petition setting forth the cause for the application and praying a change of venue, which petition shall be verified by the affidavit of the defendant." In *McCauley* v. *People,* 88 Ill. 578, it was held that a petition for change of venue not signed and sworn to by the defendant was properly denied. It was there stated: "There is no statute that authorizes any other person to petition for a change of venue on behalf of defendant."

The petition requesting the appointment of a guardian *ad litem* alleged that plaintiff in error was at the time of filing the petition an insane person. Section 12 of division 2 of the Criminal Code (Cahill's Stat. 1931, p. 1074,) provides that an insane person without lucid intervals shall not be found guilty of any crime, provided the act charged be found to be committed in the condition of insanity. This section also provides that where it appears on the trial of the charge that the act was committed as charged but defendant was lunatic or insane when the act was committed, the jury shall so find and also find whether accused has recovered. If the jury find such person has not thoroughly and permanently recovered he shall be committed to a hospital for the insane until fully and permanently recovered, but if the jury shall also find that the accused has fully and permanently recovered he shall be discharged. There is nothing in this section, either in its provisions or the apparent purpose of it, requiring a guardian *ad litem* on a trial of the charge. The jury, under that section, is to determine not only

whether the charge is proved beyond a reasonable doubt, but also, if so proved, whether the accused was at the time of the commission of the crime lunatic or insane, and if so, whether he has entirely or permanently recovered. Thus the question of the mental condition of the accused at the time of the commission of the crime is directly placed in the hands of the jury on the trial of the charge. By section 13 of division 2 of the Criminal Code it is provided that where the accused becomes lunatic or insane after the commission of the crime he shall not be tried for the offense during such lunacy or insanity. If he become insane after verdict of guilty and before judgment no judgment shall be entered while such insanity continues, and if after judgment and before execution, in capital cases, execution shall be stayed until the recovery of the accused from such insanity. This section provides that in all these cases it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic.

The petition in this case does not expressly aver that plaintiff in error was insane at the time of the commission of the crime nor that he became insane after the commission of the crime. It does state that plaintiff in error at the time of the filing of the petition is an insane person. Our statute does not expressly cover this situation, but the rule at common law was that an insane person could not be required to plead or be placed on trial for the crime charged during such disability, the reason being that by an act of God he is disabled to make his defense, and since there may be circumstances within his knowledge which would prove him innocent but which because of his mental condition he could not make use of as a defense, he should not be tried during his insanity. Writers on criminal jurisprudence concur in the view that no person in the state of insanity should be put upon his trial for an alleged crime or be made to suffer the judgment of the law. (1 Hale's

P. C. 34, 35; 4 Blackstone's Com. 395; Russell on Crimes, (1845 ed.) p. 14; Chitty, 1841, p. 1761; *Freeman* v. *People*, 4 Denio, (N. Y.) 9, 47 Am. Dec. 216.) While the situation disclosed in this petition is not clearly within the provisions of the statute quoted and no provisions appear in our statutes within which it may be included, it was held in *People* v. *Gavrilovich*, 265 Ill. 11, that the provisions of the sections of the Criminal Code hereinbefore referred to are not and were not intended to be an abrogation of the common law rule that no person should be compelled to plead to a criminal charge and be placed on trial for the crime while insane. The question of the insanity of plaintiff in error at the time the trial was called was therefore directly presented to the trial court. The presumption of sanity generally obtains, and though the defense to the charge of crime be that the accused was insane at the time of the commission of the crime, the court ordinarily may put him on trial of the charge notwithstanding knowledge of what his defense will be. That the petition filed on his behalf sought the appointment of a guardian *ad litem* was of no consequence. If on a hearing as to his sanity he was then found to be sane he could make an application for change of venue for himself, and if found to be then insane he could not, under the common law, be tried during such insanity and the appointment of a guardian *ad litem* would be wholly without purpose. It has in some cases been held that the court, when a petition of the character here involved is presented, may exercise discretion, in view of known circumstances and conditions surrounding the defendant, in determining whether the issue of insanity should be first tried before the defendant be placed on trial on the charge. *State* v. *Harrison*, 36 W. Va. 729; *Jones* v. *State*, 13 Ala. 153; *State* v. *Reed*, 41 La. Ann. 581.

The question may then be put whether there were such circumstances in this case as would permit the court, in the exercise of discretion, to deny a hearing of the question

of plaintiff in error's sanity. The petition averred that in 1918 plaintiff in error was discharged from the army as afflicted with a form of insanity known as dementia præcox; that he had been an inmate of the Elgin State Hospital for the Insane; that he had not by any proceeding been restored or found recovered, and that he was at the time of the presentation of the petition an insane person. The record discloses, and the court had a right to consider, that some months previous to the trial of this cause and subsequent to the commission of the crime a petition had been presented to the criminal court to determine the question of the then sanity of plaintiff in error and that after a partial hearing of evidence the petition was dismissed on plaintiff in error's motion. That petition having presented to the court an issue as to the then sanity of plaintiff in error, it did not remain within the power of plaintiff in error's counsel to dismiss the petition. It was a matter in which the court should have proceeded to a determination of the issue of the then sanity of plaintiff in error. The fact that it was dismissed did not settle the issue presented in the petition then on hearing or which we are now considering. The petition here averred that plaintiff in error had been regularly adjudged insane. The general rule is that where insanity is proved as existing at a particular time it will be presumed to continue until disproved. (*People* v. *Scott,* 326 Ill. 327; *Langdon* v. *People,* 133 id. 382; 1 Greenleaf on Evidence, sec. 42; 2 Bishop on Crim. Proc. sec. 674; 1 Wharton on Crim. Law, sec. 63.) As pointed out in *Langdon* v. *People, supra,* there are certain qualifications to this rule, one of which is that the insanity shown to have existed prior to the commission of the act must be of a permanent type or continuing nature. It is not sufficient that there be proof of temporary or spasmodic mania. Wharton, in his work on Criminal Law, *supra,* states the rule to be that when insanity of a permanent type is shown to have existed it will be inferred to have continued un-

less the contrary can be proved. It is otherwise, however, when the proof is of temporary or spasmodic mania. Another qualification of the rule is that too long a period of time must not be shown to have elasped between the proved insanity and the act of crime charged against the prisoner. (*Langdon* v. *People, supra;* 2 Bishop on Crim. Proc. sec. 674.) Wharton, in his work on Criminal Evidence, (vol. 1, p. 393,) states the rule to be: "The force and weight of *prima facie* proof is often materially weakened, if not altogether destroyed, by lapse of time." Whether the presumption arising out of the adjudication of insanity in the case of plaintiff in error has been overcome was a question of fact requiring evidence, and though there has been a lapse of nearly ten years since he was adjudged insane, which tends to materially weaken that presumption, no authority of which we are advised holds that in the absence of proof of facts lapse of time is alone sufficient to remove the presumption. Indeed, it is a matter of common knowledge that insanity is often permanent. The evidence on the trial disclosed that plaintiff in error was discharged from the State hospital in 1922 as improved. This, of course, is evidence, as other facts and circumstances affecting the averments of the petition are evidence. Whether it removed the presumption of insanity arising out of the finding of the county court in 1921 could not be determined without a hearing on the petition.

We are of the opinion that there were not in this case, at the time of the presentation of the petition of plaintiff in error, sufficient facts and circumstances then within the knowledge of the court to justify it, in the exercise of discretion, in refusing to hear plaintiff in error's petition before placing him on trial of the charge. It should have determined, as required at common law, whether plaintiff in error was then an insane person. That issue was there presented to the court and should have been disposed of.

The question at issue on that petition was whether plaintiff in error was capable of making a defense to the crime charged. Regardless of the unnecessary and fruitless request that a guardian *ad litem* be appointed for him, the petition directly presented the question whether at the time of the filing thereof plaintiff in error was an insane person, incapable of defending the charge of crime against him. The responsibility of raising the question of the insanity of the accused at the time of the trial is on his counsel. (*People* v. *Hart*, 333 Ill. 169.) The petition for the appointment of a guardian *ad litem* was on the ground of the insanity of the accused and directly presented there the matter of his sanity to the court and the court should have tried that question.

Other errors are assigned, but as our view of this objection requires a reversal of the judgment and it does not seem likely that such other objections will arise on a re-trial, those objections need not be considered here.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*