(No. 29096.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EMIL RECK, Plaintiff in Error.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

WM. SCOTT STEWART, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Emil Reck, was convicted in the criminal court of Cook county for the crime of murder. He was sentenced to imprisonment in the penitentiary for a period of 199 years and the cause is now before us on a writ of error.

We have only the common-law record and the briefs present no statement of errors as required by Rule 39 of this court. The assignment of errors appears only as a

part of the abstract of the record. It has been announced by this court many times that the purpose of Rule 39, requiring a statement of the errors relied upon as the concluding paragraph of the statement of the case in the briefs, is to advise the court and counsel what the alleged errors relied upon on appeal are, and to limit the issues to the questions thus stated. It appears, however, from the brief and argument for plaintiff in error that the issues sought to be tendered are based upon matters arising on the preliminary proceedings instituted by the public defender of Cook county, who was appointed as a friend of the court, and who filed a petition praying that the court empanel a jury to inquire into the question as to whether or not the defendant was a feeble-minded person and requesting that he be permitted to introduce evidence in support of his petition and that the jury make a finding in accordance with said evidence.

From the record it appears the public defender had entered his appearance for the defendant, which was later, at the request of the defendant, withdrawn on order of the court. The record then discloses that two attorneys entered their appearance as counsel for the accused. Thereafter, and while the two attorneys were still of record, the court appointed the public defender as a friend of the court. It is urged there was a lack of propriety in this appointment because it was the duty of the court to see that no advantage was taken of the defendant; that the appointment of the public defender as a friend of the court resulted in deprivation of safeguards which the court should have insisted upon.

Nothing appears in the record to show that counsel appearing of record for the defendant were in any way prevented from taking part in the proceedings as instituted by the public defender other than his appointment. It does not appear they made objection and we hardly see how it could be said that the court, merely by the appointment of

the public defender as a friend of the court and his acts thereunder, denied to the defendant necessary safeguards either as to the entering of his plea of not guilty or as to his mental condition. The acts of the public defender seemed to be in good faith and for the benefit of the defendant.

It is true, as was said in *People* v. *Hart,* 333 Ill. 169, cited by counsel for the defendant, that "The duty and responsibility of raising the question that the defendant was insane at the time of the trial rests upon him and his counsel;" and while this responsibility does rest upon his counsel, the record seems to be silent as to any attempt on their part, by motion or otherwise, to act or object to the public defender acting after their motion which they filed to have a behavior-clinic-examination report made to the court. This motion was granted and such report filed. The record discloses that the defendant, after such finding, entered a plea of not guilty and was tried before a jury while represented by counsel of his own choosing, which resulted in his conviction.

The duties of the public defender are clearly defined in the statute and the court may, with the consent of the defendant, appoint counsel other than the public defender and shall so appoint if the defendant shall so demand. If it could be determined from the record here that the public defender, acting as a friend of the court, was unfriendly to the defendant, or by his conduct failed to protect the interest of the defendant, or was assuming to displace counsel representing the defendant, it would, of course, be highly improper for the public defender to act, especially as against the wishes of counsel in the case. It certainly should be clear to any court that under such circumstances counsel for the defendant, as selected by him, has a right to carry on the case of defendant without interference and it is the duty of the court to afford such protection. After counsel is acting in a case it is certainly not proper for the court, after the public defender has

been displaced, to permit him in any way to interfere with the proceedings. His authority to proceed and his duties are fully and clearly outlined under the statute and he should in no way participate as a public defender when the defendant has demanded other counsel, or other counsel selected by him appear as attorneys of record and are so acting.

Counsel for defendant cites the case of *People* v. *Scott,* 326 Ill. 327, and quotes the language used in that opinion as follows: "It is the spirit of all decisions on this question that a minor or insane plaintiff or defendant should only be represented in a suit by one who is friendly to him and who can and will act in his interest all through the case, and it is the court's duty, in every instance, to remove such a representative where it appears that the incompetent's interests may be jeopardized or prejudiced." With this statement we fully agree, and if in this case the public defender had in any way shown hostility, or by any act had shown himself to be unfriendly, the court would have been derelict in its duty in failing to remove him.

In the *Scott case* the record recites there was no objection to the judge appointing the minute clerk as the defendant's guardian *ad litem,* but it does show that there was a motion made by defendant's attorney to remove such guardian *ad litem* and that such motion was overruled. In the case cited the guardian *ad litem* refused to sign the petition prepared by the defendant for a change of venue and this was one of the grounds in the motion for removal. In the instant case, while counsel for the defendant did make a motion for defendant to have a behavior-clinic-examination report, which was allowed and the report made, it does not appear from the record that they made any objection to the public defender as a friend of the court filing a petition for determination as to the mental condition of the defendant and proceeding thereon.

It will be observed that the petition, as filed by the public defender as a friend of the court, was in aid of the prisoner's rights. In the *Scott case* the guardian *ad litem* refused to sign the petition prepared by the defendant for a change of venue and this was one of the grounds of the motion for removal. The court there said that, while he could not be compelled legally to file a petiton for a change of venue verified by his affidavit if he did not believe that the judge was prejudiced against the defendant, it was his duty to resign as such guardian *ad litem* if he could not conscientiously file the affidavit and allow the court to appoint someone to act for the defendant. It was held in that case that it was the duty of the court to appoint a guardian *ad litem* who had the ability and inclination to properly represent the defendant in the suit; that in view of this the court erred in not removing the guardian *ad litem* and appointing another who was not hostile to the defendant and who was willing to sign and verify a petition for change of venue if reasonable grounds therefor were disclosed to him. In the instant case the public defender not only filed a petition but, it seems, was attempting to assist the defendant.

Counsel for defendant urges that the public defender was a stranger to the case and had no right to proceed to submit the question to a jury for decision and that he deceived the court as to the proper issue and set up a prayer for a false issue; that as the prayer of the petition was for a determination as to whether or not the defendant was feeble-minded, this did not constitute a proper and lawful preliminary trial as to whether or not the defendant was, in fact, sane or insane. From the record it does not appear that counsel for defendant objected to this, neither was the question presented by the defendant's attorneys in their written motion for a new trial. As to what transpired at the preliminary hearing we are not informed, as no bill of exceptions has been filed.

A proceeding under section 13 of division II of the Criminal Code, (Ill. Rev. Stat. 1943, chap. 38, par. 593,) to determine whether a defendant has become insane since he was indicted, does not involve the question of the guilt or innocence of the defendant, and as the proceeding is wholly statutory and no appeal is provided for by statute, no appeal lies from a finding that the defendant is not insane. Of course, the verdict of the jury in the preliminary hearing that defendant was not feeble-minded is not competent as evidence against him on the hearing of the indictment. The defense of insanity at the time of the commission of the crime may, therefore, be urged upon the hearing of the cause, unaffected by the finding of the jury that the defendant was not insane at the time the jury was empaneled. (*People* v. *Bechtel,* 297 Ill. 312.) No report of proceedings indicates what was done by counsel for defendant on the trial but the right existed unaffected by the finding of the jury in the preliminary hearing.

We have examined the motion for a new trial in this case and do not find that the points urged as error here were made in that motion. They were, therefore, waived and cannot be argued in this court. (*People* v. *Dron,* 360 Ill. 309; *People* v. *Hotchkiss,* 347 Ill. 217.) Of course, if it could be said that this record presents irregular proceedings which militated against the right of the defendant to a proper preliminary hearing, which resulted in his being deprived of his liberty, such proceeding would be a denial of due process of law and would extend beyond mistakes of law in the course of the trial. From the record here we do not so find and the judgment is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting.